Okay, that takes us to our sixth argument of the day in appeal number 22-3306, the United States v. Daryl McGhee. Mr. Birch, nice to see you. Good morning. Good morning. May it please the Court, I'm Anthony Birch and I represent Mr. Daryl McGhee. Your Honor, we're here on direct appeal of Mr. McGhee's conviction on two issues. The issue of his right to testify in its entirety to present a defense as well as the issuance of a last minute order regarding sanctions that would have been against both Mr. McGhee as well as counsel, in this case myself, during the trial in fact. Judges, we are asking that the review of this is done de novo. Typically, with regards to the first issue, which I think goes to the direct constitutional right of Mr. McGhee to present a defense, there was an evidentiary ruling. And that ruling, the timing of that ruling, I believe is important for the Court's consideration. The timing of that ruling came approximately 15 to 20 minutes prior to Mr. McGhee taking the stand for the defense in this case. And the only evidence that we had for the defense was Mr. McGhee's testimony. The Court made a ruling that Mr. McGhee could not test—limited his testimony in his defense so he could only testify to things that happened subsequent to a domestic violence call. There was an objection that was made at the time of that ruling. Also, during that ruling, it was made very clear by the Court that any violation of that ruling would result in a criminal contempt finding against Mr. McGhee as well as myself, his counsel, at the time. Mr. McGhee's testimony at that time would have been in direct contradiction as to the evidence that was presented by the government in the case. It would have been his version, his story of the case. And in this particular case, the government's—summing up the government's evidence, there was a domestic violence call against Mr. McGhee by his, at the time, wife who indicated that he struck me, he ran out the house with a gun. Because of the Court's ruling, Mr. McGhee was not able to testify, did not strike her, which precluded arguments of—we would have argued during the closing that there was a video of the—that there's no evidence that there was any type of physical altercation during the video. There was also precluded who else was in the home at the time of the alleged domestic violence. Also precluded Mr. McGhee from testifying that his wife also was a convicted felon, that she had also been involved in narcotics transactions prior to this particular date, as well as that she was the one that had given him the gun that was actually found in this particular case. So is it—you're giving us this background. Is this to say this is what your client would have preferred to testify to if there weren't this limitation imposed on the testimony? All that? All of that, Your Honor. And that was spelled out in our reply brief as to what he would have testified to. So in essence, even though one is afforded a right to testify, typically we hear that I have a right not to self-incriminate or not testify and the burden is strictly upon the government to prove their case beyond a reasonable doubt. In this particular case, Mr. McGhee was not afforded his right to present a defense, which he has an absolute right to. And in this case, what I just—the background that I gave and what his testimony would have been would have been his testimony. Was that clear in your view? You were there, right? So you know the trial as well as anybody. Was that clear to the trial court judge what the scope of it all would have been? Yes. It was part of pretrial motions in limine, as well as at the time of the objection that was made about the order that was given the morning of trial, as an offer of proof outside of the presence of the government as well as the jury, I made an offer of proof of what Mr. McGhee would testify to. It was precluded and he wasn't given his right to present his defense. Secondly, this goes to the question of fairness and justice with regards to a defendant in a trial where a court issues a ruling that defense counsel will go to jail for six months during the middle of a trial just goes to fundamental fairness. And when I asked the court at the time, have I done anything that would make the court believe that I would violate a court's order? Or have I done anything, no other violations that would have happened prior to trial, the court answered no. But I just want it to be clear that the court will find that it was a criminal contempt and I would be placed in custody and go to jail on that particular day. That sent a chilling effect on my client as well as myself. The difference would have been our prepared testimony of Mr. McGhee had changed now. And being a trial attorney, changes happen in court and you're thrown curveballs and things happen and you have to adjust for it. But in this particular case, as an individual, as well as the attorney for Mr. McGhee, I now have to worry about any language that Mr. McGhee or answers that he would give in response to a question that I'm asking. And I have to also think about any questions that I ask that might potentially violate the court's order. And again, the timing of the order, roughly 15 to 20 minutes prior to Mr. McGhee taking the stand, severely restrained and impacted his right to a fair trial. Based upon that, we are asking that this court grant Mr. McGhee a new trial. If the court doesn't have any other questions for me at this point. I do, Mr. Burch. Have you had prior contact with the district judge in other cases? Do you have a history with the judge? No, this was my first trial in front of the court as a history of the case. There was a prior counsel prior to me coming in on the case. But no, I had not had any history. But I asked the court, in essence, why are you saying this to me? Why am I going to be held in contempt of court? What have I done? And the court answered, nothing. I just want you to make sure you know you're going to jail and I will consider it direct criminal contempt if you violate this order. I had a similar question for Judge Flom. My impression, correct me if I'm wrong, you know this best, okay, was I can't figure out for the life of me why the temperature turned up this high on this issue. Because you, your relationship with the court, my observation, this is what I'm asking you, actually seemed pretty darn good during the course of the trial. You were representing your client, doing the best you could, making objections, making arguments. And then all of a sudden, for some reason, there's like a switch that flips on this particular point. Is that fair or not? That's a very fair observation. I've thought about that since it happened in this particular case, and I don't have an answer. Quite frankly, I don't have an answer. I know how it made me feel. It's reflected in my offer of proof that I made in terms of the record at the time. And I still question what could I have done differently, not necessarily for the order, but because of the order. And based upon that, I believe fairness and justice demands that Mr. McGee have a right to a trial where he is able to testify. Okay, we'll give you a minute on rebuttal. You want to save some time? Yes, thank you. Mr. Canestra, welcome back. May it please the court, Jeff Canestra on behalf of the United States. The district court acted within its broad discretion in excluding the evidence under the rules of evidence, and it didn't violate the defendant's constitutional rights in doing so or offering a reminder of the consequences of doing so. In all events, any error here would have been harmless, given the overwhelming weight of evidence against the defendant, as well as the minimal support for the speculative theory that he offers now on appeal and that he sought to present. Here's what concerns me. Set aside harmless error. I don't understand why it has to be all or nothing. So Mr. Birch is making some pretty good points about this is what we proffered, there was no question, this is what the testimony – the trial judge can say, no, I don't want you to go – I can't allow Mr. McGee to go that far, Mr. Birch. But what troubles me is why wasn't Mr. McGee allowed to deny the domestic abuse and say, Mr. Birch, you can elicit that, I'm going to stop it at that because I don't want to have a whole bunch of collateral focus and a mini trial and all that. But the government's allowed to put in the 911 tape. The government puts in the statement of what the wife told the police at the door. It seems very one-sided that the defendant can't at least deny that he abused his wife. I understand that concern, Your Honor. Undoubtedly, the district court would have been within its discretion in pursuing in that matter, in pursuing the matter in that respect. The government here hadn't sought to exclude this evidence. But of course, the district – In fact, the opposite, right? The government seemed troubled by the breadth of the district court's ruling. Yeah, I can see why too because it's the defendant that's testifying. It would be different – I mean, you can concede the point but still win the case, but it's different if it's the – They want to hear from the defendant. It'd be different if the defendant wanted to put on other witnesses to explain the marital relationship or to deny the domestic abuse. Right, and I certainly take your concern in that regard. One thing I – I just don't know why Mr. Birch was not allowed to ask the question, Mr. McGee, did you in any way abuse your wife that day? Right, and so what the district – The defendant said no, and then Mr. Birch would have followed the eliminate ruling and went on and asked about other topics. So in fairness, I don't think the defendant's proposal was that limited and the – No, I know, but I don't understand why the district judge reacted so broadly because the trial evidence includes – it's very inflammatory. I mean, it's very prejudicial. So what the district court said is that it didn't want to try charges other than those that were before the jury. But it wouldn't have because the rules of evidence would have disallowed any extrinsic evidence on that point. So all he could do was deny it, stuck with it. That's it. I mean, you can't call the neighbor – the government in rebuttal can't call the neighbor to say he actually did hit his wife and I saw it. That's disallowed under the rules of evidence. And I think the judge in furtherance of that could have said, and I'm not allowing you to give a long narrative about what went down in the two or three hours before the police showed up. I'm not allowing that. I'm going to allow you to deny it and then we're moving on. The district court certainly could have, Your Honor. Mr. Canestra, the interesting thing for me here is it'd be – this case might be a little different to me if the defense was that the defendant had the drugs in the bag but not the gun. In other words, the wife planted the gun in the bag and then sent the police out to go get him. That was not the defense. And clearly, I understand why. I mean, it's really hard to walk your defendant into a drug conviction and argue against the – I mean, that would be a very questionable strategy. But were that the strategy, I think the district judge – and besides that, don't we kind of expect district judges to question, objection, sustained, objection, overruled in a more narrowly tailored way? That's how things often work. The government proposed that as well. The party's positions, though, don't constrain the district court. The district court is, of course, the individual who's presiding over the trial, who's tasked with keeping it on course. The context, I think, further informs the district court's decision because in the opening statements, defense counsel said there are two questions for the jury. And then what he said was the jury was going to have to use its common sense to decide was there a call of domestic violence and did domestic violence actually occur on this occasion. So when it came to this, the district court was more concerned about keeping the issue focused on the charges on trial, avoiding confusing the issues. And undoubtedly, the district court could have weighed the factors differently. But the government's position is that this was still – in the context in which it transpired, it was still within the district court's discretion. And the district court, I think it's worth noting, did allow the defendant to testify to all the facts in his personal knowledge about the bag, the gun, and how he ended up where he was. He didn't claim any personal knowledge about his wife or anyone else doing anything with regard to the bag. His claim is essentially that she had a motive in general to inculpate him somehow. But that wouldn't show that she did anything with regard to the bag, and the defendant was allowed to. In fact, that was one of the topics during the in-camera discussion. The court allowed the defendant to say, I was out there because I knew my wife called 911 and accused me of a crime. I didn't have the bag with me. There were tire tracks out there, but I have no idea who – or I didn't see who, if anyone else had put the bag there, but he suspects that it was his wife. Do you think the judge based his ruling, his evidentiary ruling, on 403 or on relevance? Was it prejudice or relevance? The district court said both. It certainly did say relevance and also said prejudicial, and its discussion made clear that it was concerned about trying charges that weren't before the court. This court, faced with the same circumstances in Cox, is one example where the defendant wanted to present evidence, essentially sort of reverse 404B evidence that someone else may have committed the offense. The district court there said it was both irrelevant and prejudicial. This court put aside the relevance and only resolved the case on 403 grounds, holding that the district court didn't abuse its discretion in that respect. That's a perfectly – that's a ground on which this court could affirm here as well. I'd like to briefly touch, with Your Honor's permission, on the harmlessness because we do think that that is perhaps the most straightforward way to resolve this appeal under the circumstances. As the district court itself recognized, the evidence of the defendant's guilt was overwhelming. This was the defendant's own bag with his own firearm along his own footprints, near where the defendant himself was found hiding in the bushes in the middle of the night during a snowstorm. On top of that, he had discarded $381 in the bushes. That's not something you would do if you're fleeing allegations of domestic violence, but it makes perfect sense if you're trying to distance yourself from drug trafficking like the cash, a loaded firearm, and cocaine. And, of course, the defendant's own social media posts and his admissions at trial confirmed that, in fact, this was the defendant's bag with the defendant's firearm. The alternative theory that the defendant is arguing is really speculative. The district court characterized it as fantastic. It would require finding that the defendant's wife essentially threaded the needle with a really extended set of long shot chances in order to account for how the bag ended up where it did under those very specific circumstances. The wife would have had to count on the defendant not only going to this particular location, which is one of two locations she told the officers he may be going to, but also going past the dumpsters and in front of them instead of behind them. She'd have to count on the defendant not himself seeing the bag when he passed it, then on the officers actually searching for and successfully finding the defendant before he got picked up by his friend who he was calling, because that was the only way they would know to retrace the steps and look for the bag. On top of that, she'd have to assume that the officers would actually take the time in these same frigid conditions and succeed in finding the bag. But on top of that, the defendant's wife would have had to have planted a very large amount of cocaine in this bag for the specific purpose of being found by the police, and yet she would have had to fail to tell the officers about the cocaine in the bag. When they arrived, she said that he went out the back door with the MCM bag and the firearm. If in fact she had planted this large amount, over $10,000 of cocaine, and needed to make sure that the officers were going to take the time to find it, it's implausible that she wouldn't have told them the MCM bag, firearm, and cocaine. This theory also can't, again, be reconciled with the fact that the defendant himself discarded all this money in the bushes where he was hiding, and really the evidence in question offers very little support for this alternative theory. It would show essentially that his wife had some motive in general to see that he gets in trouble. It wouldn't show that she took all these outlandish and far-fetched steps that would be necessary to account for the presence of this bag under the conditions it was just found. So understanding your concerns about some of the evidentiary issues, the government would ask this court to affirm, if nothing else, on harmless grounds. Thank you, Your Honors. Very well. Thanks to you. Mr. Birch, we'll give you a full minute in rebuttal for thoughts you have. Thank you. I rely upon my written submissions as well as many of the arguments that the government just made, dealt with arguments that quite honestly should have been made before a jury. And in this particular case, the arguments that Mr. McGee would have made, even though the government does not think that they have any merit, even though he thinks that they don't amount to anything, that's his right to his defense. And in this particular case, he wasn't allowed to present his defense. Based upon that, we would ask that this court overturn. You agree at the very least, though, that he wasn't even allowed to deny the allegation of spousal abuse. Yes. On the witness stand. Was not allowed to do that. And had you asked him that question, you would have been held in criminal contempt and jailed. For six months. Yes. All right. Mr. Birch, I find this exchange between you and the district judge troubling. Indeed, in my many years of hearing argument, this is one of the more disturbing examples, if it occurred. When the judge informed you of that potential, and you tell us now that it chilled you going forward with your representation, did you convey that to the judge? Yes, Your Honor. And it's part of the back and forth with the court. I, in fact, told the judge that, I believe my exact words were, I can't think about this particular trial because now I am thinking about going to jail. The court's response was, I didn't say that you were going to jail only if you violate my order. And my response to him was, as a human, I hear what you are saying, but I am telling you now, I'm thinking about going to jail. Is your position you are unable to represent him during the rest of the trial? It's my, no. It's my position that I was not able to represent him fully and for us to fully put on a defense based upon the court's ruling. I understand your objection to the ruling. I'm just trying to understand whether your client had a counsel. Are you saying, you being the counsel, that you were not in a position to continue? No, I wasn't a, no, I'm not saying that, Your Honor. I am saying that in most, in all instances other than this particular case where I am representing my client, their interests are put before mine and this is their time, this is their right. In this particular case, I had to divide that. So we did not have my, he did not have his full service as he typically would. But I did the, in my, I did what I could under the circumstances. In the instance of justice and fairness, we would ask that this court overturn the conviction of misdemeanor. Can I hold you for just one more second? Yes. I mean, you are in response, you are arguing, I mean, you were as clear as day to the district judge that you thought the ruling was unfair. Yes. You know, and that it would impose, and you are, that it resulted in an unfair trial for your client because he was put on the witness stand with counsel and the defendant being under threat of criminal contempt and not even allowed to answer the limited question, did he abuse his spouse? Yes. That is, he did not have a fair trial. Okay. Thank you. Thank you. Thank you to the government as well. We'll take the appeal under advisement, and that wraps up today's arguments. Thank you.